## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

### CASE NO.:

| | |
|---|---|
| **ROBERT PINTO,** | § |
| **Plaintiff,** | § |
| | § |
| **v.** | § |
| | § |
| **CITY OF HOLLYWOOD FLORIDA,** | § |
| **CHIEF OF POLICE FRANK G.** | § |
| **FERNANDEZ IN HIS OFFICIAL** | § |
| **CAPACITY, OFFICER ERIC** | § |
| **AUGUSTUS IN HIS INDIVIDUAL** | § |
| **CAPACITY, OFFICER ANTONIO** | § |
| **DABREAU IN HIS INDIVIDUAL** | § |
| **CAPACITY, OFFICER ALFORD IN** | § |
| **HIS INDIVIDUAL CAPACITY,** | § |
| **OFFICER YASMANI RUIZ IN HIS** | § |
| **INDIVIDUAL CAPACITY, OFFICER** | § |
| **WILLIAM FERGUSON IN HIS** | § |
| **INDIVIDUAL CAPACITY, OFFICER** | § JURY TRIAL DEMANDED |
| **DWAYNE CHUNG IN HIS** | § |
| **INDIVIDUAL CAPACITY,** | § |
| **SERGEANT JULIO GONZALES IN** | § |
| **HIS INDIVIDUAL CAPACITY,** | § |
| **UNKNOWN OFFICER OF THE** | § |
| **HOLLYWOOD POLICE** | § |
| **DEPARTMENT #1 IN HIS** | § |
| **INDIVIDUAL CAPACITY,** | § |
| **UNKNOWN OFFICER OF THE** | § |
| **HOLLYWOOD POLICE** | § |
| **DEPARTMENT #2 IN HIS** | § |
| **INDIVIDUAL CAPACITY** | § |
| | § |
| | § |
| **Defendants.** | § |

### COMPLAINT

COMES NOW the Plaintiff, by and through the undersigned counsel, and hereby

brings this action for money damages pursuant to 42 U.S.C. §§ 1983 and 1988, the First

1

Amendment, the Fourth Amendment, and the Fourteenth Amendment to the United States Constitution against the City of Hollywood, Florida, Police Chief Frank Fernandez in his official capacity, Officer Eric Augustus in his individual capacity, Officer Antonio Dabreau in his individual capacity, Officer Yasmani Ruiz in his individual capacity, Officer William Ferguson in his individual capacity, Officer Dwayne Chung in his individual capacity, Officer Alford in his individual capacity, unknown officer #1 of the Hollywood, Florida Police Department in his/her individual capacity.

## JURISDICTION

1.      Jurisdiction of this Court arises under 28 U.S.C. §§ 1331 and 1343, as well as under 42 U.S.C. §§ 1983 and 1988.

2.      Venue is proper pursuant to 28 U.S.C. § 1391 in that a substantial part or all of the events or missions giving rise to the claims being asserted occurred in this Judicial District.

## PARTIES

3.      Plaintiff, Robert Pinto ("Plaintiff"), is over the age of eighteen and was a resident of Florida at all times relevant to this action.

4.      Defendant, the City of Hollywood, Florida ("Hollywood") is a governmental entity in Broward County, Florida that engages in policing functions.

5.      Defendant, Police Chief Frank Fernandez ("Police Chief"), is the Chief of the Hollywood Florida Police Department.

6.      Defendant, Officer Eric Augustus ("Officer Augustus"), was employed as an officer of the Hollywood, Florida police department at all times relevant to this action and was present at the time of the incident on or about July 12, 2010.

2

7.     Defendant, Officer Antonio Dabreau ("Officer Dabreau"), was employed as an officer of the Hollywood, Florida police department at all times relevant to this action and was present at the time of the incident on or about July 12, 2010.

8.     Defendant, Officer Alford was employed as an officer of the Hollywood, Florida police department at all times relevant to this action and was present at the time of the incident on or about July 12, 2010.

9.     Defendant, Officer Yasmani Ruiz ("Officer Ruiz"), was employed as an officer of the Hollywood, Florida police department at all times relevant to this action and was present at the time of the incident on or about July 12, 2010.

10.    Defendant, Officer William Ferguson ("William Ferguson"), was employed as an officer of the Hollywood, Florida police department at all times relevant to this action and was present at the time of the incident on or about July 12, 2010.

11.    Defendant, Officer Dwayne Chung ("Officer Chung"), was employed as an officer of the Hollywood, Florida police department at all times relevant to this action and was present at the time of the incident on or about July 12, 2010.

12.    Defendant, Sergeant Julio Gonzalez ("Officer Gonzalez"), was employed as an officer of the Hollywood, Florida police department at all times relevant to this action and provided the Complaint Intake Form to Plaintiff. **Exhibit A.**

13.    Unknown Officer #1, was employed as an officer of the Hollywood, Florida police department at all times relevant to this action and was present at the time of the incident on or about July 12, 2010.

14.     Unknown Officer #2, was employed as an officer of the Hollywood, Florida police department at all times relevant to this action and was present during Plaintiff's meeting with the internal affairs department in September 2014.

<u>FACTS</u>

15.     On July 12, 2010, Plaintiff Robert Pinto and his friend Douglas Murray ("witness") were in the City of Hollywood checking on an investment property located at 1305 N. 58th Avenue.

16.     Shortly after leaving the property in his white Jeep Cherokee, Plaintiff Pinto noticed he was being closely followed by an old, beaten up, light blue Pontiac Grand Prix.

17.     Plaintiff was driving and Douglas Murray was in the passenger seat.

18.     Plaintiff was wearing a light blue and white button down, short sleeve, collared, shirt.

19.     Plaintiff stopped at the stop sign at the intersection of 46th Avenue and Arthur Street.

20.     After stopping, Plaintiff looked through his rearview mirror at the vehicle behind him, who was following him so closely that Plaintiff feared he was going to be hit.

21.     As Plaintiff proceeded South on 46th Avenue, the Pontiac ran the stop sign and continued to follow Plaintiff's vehicle closely.

22.     Plaintiff looked through his rearview mirror and saw small blue and red lights flashing.

23.     The unmarked car used a portable blue and red flashing lights to pull over Plaintiff.

24.     Plaintiff Pinto was suspicious due to the appearance of the unmarked car, so he pulled his car into a private circular driveway.

25.     Officer Dabreau exited his Pontiac and approached the driver's side of Plaintiff's vehicle with his hand on his gun.

26.     Officer Dabreau was wearing all black, tactical clothing with no markings, lettering, or police insignia.

27.     Officer Dabreau was carrying a gun.

28.     Another unmarked vehicle pulled into the driveway behind the Pontiac.

29.     The second vehicle was an unmarked black SUV with dark tinted windows.

30.     Detective Alford, wearing all black tactical clothing, exited his vehicle and approached Officer Dabreau.

31.     Neither officer was wearing a badge, name tag, or insignia.

32.     Neither officer identified himself to Plaintiff or to Doug Murray, who was a passenger in Plaintiff's vehicle.

33.     One officer stated that they were on burglary detail while the other officer claimed to be on traffic detail.

34.     Neither officer provided Plaintiff with a valid reason for stopping him.

35.     The officers questioned Plaintiff about his whereabouts and asked for his identification.

36.     Plaintiff showed the officers his valid State of Florida driver's license, which was contained in a clear flap in his wallet.

37.     Plaintiff also had his General Services Administration card in his wallet, also in a clear flap.

38.     General Services Administration ("GSA") is an independent agency of the United States government, which helps maintain and support the basic functioning of federal agencies.

39.     Plaintiff was a contractor with GSA and had been issued an official GSA identification card.

40.     Officer Dabreau told Plaintiff that he was pulled over for "fading break lights."

41.     After questioning Plaintiff to their satisfaction, Officers Dabreau and Alford left.

42.     Plaintiff and his passenger, Douglas Murray, felt uneasy about the situation because the unknown officers never identified themselves.

43.     Plaintiff and Murray decided to report this suspicious conduct, which they believed to be fraudulent.

44.     Plaintiff and Murray drove to the City of Hollywood Police Department to report the incident.

45.     Plaintiff and Murray arrived at the City of Hollywood Police Department at approximately 1:40 PM.

46.     Plaintiff and Murray entered the lobby, walked up to the window, and mentioned to the service aide that he had just been pulled over by two men who did not

appear to be legitimate police officers and he wanted to put the Hollywood Police Department on notice of that activity.

47.     Plaintiff asked to see Officer Ferguson, but was told he was in a lineup.

48.     Shortly thereafter, the aide instructed Plaintiff to go up to the third floor, so Plaintiff took the elevator to the third floor.

49.     Plaintiff waited in the third floor lobby for approximately 10 minutes before Officer Augustus and Unknown Officer #1 approached him and stood closely on either side of Plaintiff.

50.     Officer Augustus and Unknown Officer #1 were wearing tactical clothing.

51.     Unknown Officer #1 is a stocky bald man with a slightly grey mustache and goatee.

52.     Officer Augustus asked Plaintiff what his problem was.

53.     Plaintiff explained that he had been pulled over by two men whom he believed to be falsely impersonating police officers.

54.     Officer Augustus angrily responded, "They work for me!"

55.     Officer Augustus became very aggressive and angry.

56.     Officer Augustus started to question Plaintiff in an agitated manner while standing very close to Plaintiff, thus causing Plaintiff to feel threatened.

57.     With each question, Officer Augustus became more hostile, more vocal, and caused Plaintiff to feel extremely intimidated.

58.     Plaintiff left the third floor and went back downstairs.

59.     Plaintiff walked over to Murray, who had been waiting in the lobby of the first floor, and described the way he was treated upstairs.

60.     Plaintiff told Murray, "You should have seen the way I was just treated. I want to make a complaint about the way I was just treated by the guys upstairs."

61.     At this point, Officer Kenneth Haberland walked out from an office located beside the information window and walked by Plaintiff and Murray towards the exit.

62.     Plaintiff asked, "Sir, are you a sergeant? I want to make a complaint."

63.     As he exited the station, Murray held the door open for him, and Officer Haberland told Murray, "Tell him to ask for an administrative Sergeant. They handle complaints."

64.     Plaintiff heard the exchange and immediately approached the information window to ask for an administrative Sergeant.

65.     At that point, Officer Augustus came out of the elevator, walked toward Plaintiff, and grabbed Plaintiff before he could get an answer from the administrative aide.

66.     Officer Augustus took Plaintiff and Murray outside to the front of the building and angrily said, "Oh, so now you're changing your story? You're changing it from an inquiry to a complaint?"

67.     Plaintiff responded, "No, I'm not. My inquiry is about the two people that pulled me over. My complaint is about you."

68.     Officer Augustus angrily asked, "What's wrong with you?"

69.     Plaintiff explained that he came to the police station for help and to report the people he felt were illegitimate officers and instead he was being treated poorly and being badgered by Officer Augustus for no reason.

70.     Officer Augustus led the Plaintiff and Murray back inside.

71.     Before the elevator opened, Officer Augustus approached the aide at the window and said, "Didn't this guy say he was a federal agent?" The aide did not appear to know what he was talking about until Officer Augustus asked him again while nodding his head: "Didn't this guy say he was a federal agent?!" The aide, finally giving in to the intimidation, said, "Yes, yes he did."

72.     Officer Augustus then led Plaintiff up to the third floor into what appeared to be a break room.

73.     Officer Augustus called Officer Ferguson over.

74.     Plaintiff was acquainted with Officer Ferguson from a previous incident. Months earlier, Plaintiff had been stopped while walking into an office building by Officer Chung for no apparent reason and Plaintiff later lodged a complaint, which Officer Ferguson handled.

75.     Officer Augustus asked Plaintiff for his wallet and Plaintiff obliged.

76.     Officer Augustus looked through Plaintiff's wallet and removed the government ID and driver's license.

77.     Officer Ferguson asked Plaintiff if he had a supervisor at the General Services Administration ("GSA").

78.     Plaintiff gave Ferguson his supervisor's name and phone number.

79.     Officer Ferguson called the supervisor and confirmed Plaintiff's identity and credentials.

80.     Officer Ferguson recognized Plaintiff as having previously made a complaint against Officer Chung.

9

81.     Officer Chung was called in to the break room.

82.     Officer Ferguson told the other officers, "Let's teach this guy a lesson."

83.     Officer Augustus then asked Plaintiff to stand and put his hands behind his back.

84.     Officer Augustus told Plaintiff, "If I have it my way, you'll never work for the government again."

85.     Officer Augustus handcuffed Plaintiff.

86.     Plaintiff was never told why he was being arrested and he was never read his *Miranda* rights.

87.     Plaintiff's mugshot was taken, he was fingerprinted, he was asked to change into inmate clothing, and he was forced to wait in a holding cell for several hours.

88.     Plaintiff was later escorted to a police transport van and at that time he received a sheet of paper, which stated that he was being arrested for impersonating a law enforcement officer.

89.     Plaintiff was taken to the Broward County jail where he was processed.

90.     Plaintiff's GSA identification card, parking pass, t-shirts, and yellow hazard lights were confiscated.

91.     Plaintiff was unlawfully imprisoned in the Broward County jail for two and a half days.

92.     The Complaint Affidavit signed by Defendant Dabreau states that Plaintiff is being charged with 1 count of "impersonat[ing] officer on commission of felony/cause death/inj[ur]y." **Exhibit B.**

10

93.     The Complaint Affidavit also falsely claims that Plaintiff ran a stop sign, nearly caused a collision with a red Sedan, and was let off with a warning. **Exhibit B.**

94.     Defendant Yasmani Ruiz signed off on some of the police reports despite the fact that Plaintiff does not recall having any contact whatsoever with Officer Ruiz.

95.     There are numerous discrepancies in the police reports.

96.     Plaintiff was scheduled to perform services pursuant to a government contract the week of his arrest.

97.     As a result of the unlawful arrest by Defendants, Plaintiff lost his contractor status with the General Services Administration of the Federal Government.

98.     As a result of the unlawful arrest, Plaintiff has suffered great emotional distress, has lost his contractor status, has lost out on countless profitable contracts, and has lost stability in his life.

99.     Furthermore, Plaintiff's background is now stained with an arrest for impersonating an officer in the commission of a felony causing death or injury.

100.     On August 2, 2010, the State Attorney's Office did not file an Information and declined to prosecute.

101.     The City of Hollywood then notified the Federal Government, this time claiming that Plaintiff had impersonated a federal law enforcement agent.

102.     On December 7, 2010, the Federal Government personally delivered a Target letter to Plaintiff indicating that he was the target of a federal grand jury investigation involving allegations of impersonation of a federal law enforcement agent in violation of 18 U.S.C. §§ 912 – 913.

103.    The Federal investigation lasted just over 3 years, during which time Plaintiff was uncertain about his future and whether he would eventually be formally charged with a crime.

104.    The Federal Government closed its case in August 2013 finding no evidence that Plaintiff impersonated a federal agent or was involved in any wrongdoing.

105.    During the pendency of the entire investigation by both the State and federal government Plaintiff suffered the anguish of knowing he could be facing prison time for a crime he did not commit.

106.    Plaintiff could not take any action until his name had been cleared completely of any and all wrongoing.

107.    Once Plaintiff was cleared of all wrong doing by the federal government, he decided to once again pursue a complaint regarding the way he was treated and the false accusations lobbied against him.

108.    Plaintiff visited the internal affairs department for the City of Hollywood Police Department.

109.    Sergeant Julio Gonzalez received the complaint.

110.    Plaintiff was asked to sign a Hollywood Police Department Complaint Intake Report citing Fla. Stat. § 112.533. **Exhibit A.**

111.    Shortly after filing his Complaint with Internal Affairs, Plaintiff was called in for an interview.

112.    During the interview with the Internal Affairs Department of the City of Hollywood Police Department, Sergeant Gonzalez and Unknown Officer #2 were present.

113.    Sergeant Gonzalez and Unknown Officer #2 questioned Plaintiff.

114.    Each time Plaintiff complained about the poor treatment he received by the other officers during the 2010 incident, Unknown Officer #2 would warn Plaintiff, "you're antagonizing me."

115.    Unknown Officer #2 attempted to intimidate Plaintiff during the meeting.

116.    The intimidation tactics by Unknown Officer #2 were in retaliation for Plaintiff's complaint regarding the manner in which he was treated and his unlawful arrest.

117.    Plaintiff suffered damages as a direct result of the Defendants' unlawful behavior.

## OVERVIEW: DEFENDANTS VIOLATED PLAINTIFF'S CONSTITUTIONAL RIGHTS

118.    Plaintiff repeats, re-alleges, and incorporates by reference the allegations and facts set forth in paragraph 1-117 above with the same force and effect as if herein set forth.

119.    The Fourth Amendment of the United States Constitution provides that:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized. U.S. CONST. amend. IV.

120.    The Fourteenth Amendment of the United States Constitution provides, in part:

No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws. U.S. CONST. amend. XIV, § 1.

The Congress shall have power to enforce, by appropriate legislation, the provisions of this article. U.S. CONST. amend. XIV, § 5.

121.    The First Amendment provides:

Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances. U.S. CONST. amend. I.

122.    At all times relevant herein, the conduct of the Defendants was subject to the United States Constitution and 42 U.S.C. § 1983.

123.    Each of the acts of the Defendants alleged in this Complaint was done under color of law.

124.    Acting under color of law, Defendants Hollywood, Augustus, Dabreau, Ruiz, Ferguson, Chung, Gonzalez, Alford, and unknown Officer #1 unreasonably seized and arrested Plaintiff in violation Plaintiff's Fourth and Fourteenth Amendment rights.

125.    Acting under color of law, Defendant City of Hollywood violated Plaintiff's First Amendment rights when it used an unconstitutional statute in the Complaint Intake Report threatening criminal charges for disclosing any information regarding the events of July 12, 2010 his complaint to the Internal Affairs Unit, or the internal police investigation that followed.

126.    The Defendants' conduct violated Plaintiff's clearly established constitutional rights.

127.    As a result of Defendants' actions, Plaintiff was deprived of his liberty, in violation of the First, Fourth, and Fourteenth Amendment of the United States Constitution and 42 U.S.C. § 1983.

128.     Defendants' misconduct directly and proximately caused Plaintiff to suffer injury, including loss of his job, loss of his contractor status, seizure of his lawfully-possessed GSA paraphernalia, public humiliation, and emotional distress.

### COUNT I: DEFENDANTS' UNLAWFULLY SEIZED PLAINTIFF IN VIOLATION OF THE FOURTH AMENDMENT BECAUSE THE SEIZURE WAS UNREASONABLE
### (AGAINST DEFENDANTS CITY OF HOLLYWOOD, AUGUSTUS, DABREAU, RUIZ, FERGUSON, CHUNG, ALFORD, UNKNOWN OFFICER #1)

129.     Plaintiff repeats, re-alleges, and incorporates by reference the allegations and facts set forth in paragraph 1-128 above with the same force and effect as if herein set forth.

130.     At all times relevant to the Complaint, Officers Augustus, Dabreau, Ruiz, Ferguson, Chung, Officer Alford, and unknown officer #1 were acting under color of law.

131.     The initial seizure of Plaintiff by Officers Dabreau and Alford was unlawful and in violation of Plaintiff's Fourth Amendment rights.

132.     Plaintiff's arrest by Officers Augustus, Dabreau, Ferguson, Chung, and Ruiz was in violation of Plaintiff's Fourth Amendment rights.

133.     The arrest, hand-cuffing, and jailing of Plaintiff by Defendants was in violation of Plaintiff's Fourth Amendment rights.

134.     Plaintiff was unlawfully arrested and detained by Officers Augustus, Dabreau, Ferguson, Ruiz, Chung, Alford, and unknown officer #1.

135.     Plaintiff was unlawfully detained in a holding cell as a result of the actions of Officers Augustus, Dabreau, Ferguson, Ruiz, Chung, Alford, and unknown officer #1.

15

136.     The Defendants' continuing seizure of Plaintiff and transportation to the Broward County jail was in further violation of Plaintiff's Fourth Amendment rights.

137.     The Fourth Amendment applies to seizures conducted by law enforcement.

138.     A person has been seized within the meaning of the Fourth Amendment if in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.

139.     A reasonable person in Plaintiff's situation would not have felt free to leave.

140.     Furthermore, Plaintiff was imprisoned for two and a half days.

141.     Seizures with the essential attributes of full custodial arrest by law enforcement officers are reasonable only if supported by probable cause.

142.     None of the officers had a valid warrant for Plaintiff's arrest.

143.     Officers Augustus, Dabreau, Ferguson, Ruiz, Chung, Alford, and unknown officer #1 did not have even arguable probable cause to seize Plaintiff or question him after he tried to complain about the way he was treated.

144.     Plaintiff was reporting suspicious behavior to the authorities.

145.     Plaintiff never impersonated an officer of any kind.

146.     Plaintiff's statements regarding his employment with GSA were truthful.

147.     There were no facts to support the seizure of Plaintiff by Officers Augustus, Dabreau, Ferguson, Ruiz, Chung, Alford, or unknown officer #1.

16

148.    The arrest and detention of Plaintiff by Defendants were carried out unlawfully, intentionally, and maliciously, without just or probable cause, and thus constitute a false arrest and false imprisonment.

149.    Officers Augustus, Dabreau, Ferguson, Ruiz, Chung, Alford or, unknown officer #1, acted outside their discretionary authority as police officers and violated a clearly established constitutional right.

150.    In the alternative, if Officers Augustus, Dabreau, Ferguson, Ruiz, Chung, Alford, and unknown officer #1 acted within their discretionary authority, they violated a clearly established constitutional right.

151.    Furthermore, the unlawful arrest and detention of Plaintiff resulted from the unlawful policy and custom of the Police Chief and City of Hollywood.

152.    The seizure of Plaintiff was unreasonable and therefore was unconstitutional.

WHEREFORE, Plaintiff requests judgment against defendants, and each of them, for: compensatory damages; punitive damages against Officers Augustus, Dabreau, Ferguson, Ruiz, Chung, Alford, and unknown officer #1; reasonable attorney's fees; costs of suit; as well as declaratory relief declaring the acts of Defendants to be unconstitutional; and such other relief as the Court may deem just and proper.

**COUNT II: DEFENDANTS' ACTIONS CONSTITUTED UNLAWFUL ARREST IN VIOLATION OF THE FOURTEENTH AMENDMENT BECAUSE THE ARREST WAS UNSUPPORTED BY PROBABLE CAUSE OR A VALID WARRANT
(AGAINST DEFENDANTS HOLLYWOOD, OFFICERS AUGUSTUS, DABREAU, RUIZ, FERGUSON, CHUNG, ALFORD, UNKNOWN OFFICER #1)**

153.     Plaintiff repeats, re-alleges, and incorporates by reference the allegations and facts set forth in paragraph 1-128 above with the same force and effect as if herein set forth.

154.     At all times relevant to the Complaint, Officers Augustus, Dabreau, Ruiz, Ferguson, Chung, Alford, and unknown officer #1 were acting under color of law.

155.     Plaintiff was detained by Officers Augustus, Dabreau, Ruiz, Ferguson, Chung, Alford and unknown officer #1 on the third floor of the police station after he tried to lodge a complaint for the way he was treated during his initial meeting with Officer Augustus.

156.     Defendant Officers did not have any probable cause to arrest Plaintiff.

157.     Defendant Officers did not have a valid arrest warrant.

158.     Defendant Officers unlawfully arrested, handcuffed, and detained Plaintiff for a substantial period of time.

159.     Defendant Officers unlawfully caused Plaintiff to be incarcerated.

160.     Plaintiff was booked for a crime he did not commit.

161.     At no point did Plaintiff feel free to leave, nor was he able to leave.

162.     At no point was Plaintiff told he could leave.

163.     There was no arguable probable cause for Plaintiff's arrest, given the fact that he did not in any way impersonate an officer.

164.     The arrest and detention of Plaintiff by Defendant Officers were carried out unlawfully, intentionally, and maliciously, without just or probable cause, and thus constitute a false arrest and false imprisonment.

18

165.     Defendant Officers willfully, unlawfully, intentionally, and maliciously concocted a false account of events and conspired to create police reports containing false information in order to support the unlawful arrest and detainment of Plaintiff.

166.     All of the allegations made in the police reports are false, have no basis in fact, and were concocted by the Defendant Officers out of retaliation because Plaintiff asked to file a complaint.

167.     Officers Augustus, Dabreau, Ruiz, Ferguson, Chung, Alford, and unknown officer #1 acted outside their discretionary authority as police officers and violated a clearly established constitutional right.

168.     In the alternative, if Officers Augustus, Dabreau, Ruiz, Ferguson, Chung, Alford, and unknown officer #1 acted within their discretionary authority, they violated a clearly established constitutional right.

169.     The arrest and detention of the Plaintiff was an unlawful restriction of liberty in violation of the Fourteenth Amendment.

WHEREFORE, Plaintiff requests judgment against defendants, and each of them, for: compensatory damages, punitive damages against Defendant Officers Augustus, Dabreau, Ruiz, Ferguson, Chung, Alford, and unknown officer #1; reasonable attorney's fees; costs of suit; as well as declaratory relief declaring the acts of Defendants to be unconstitutional; and such other relief as the Court may deem just and proper.

**COUNT III: DEFENDANTS VIOLATED PLAINTIFF'S FIRST AMENDMENT RIGHTS WHEN THEY ARRESTED PLAINTIFF WITHOUT CAUSE AS RETALIATION FOR HIS REQUEST TO FILE A COMPLAINT**
**(AGAINST DEFENDANTS HOLLYWOOD, OFFICERS AUGUSTUS, DABREAU, RUIZ, FERGUSON, CHUNG, ALFORD, UNKNOWN OFFICER #1)**

19

170.     Plaintiff repeats, re-alleges, and incorporates by reference the allegations and facts set forth in paragraph 1-128 above with the same force and effect as if herein set forth.

171.     At all times relevant to the Complaint, Officers Augustus, Dabreau, Ruiz, Ferguson, Chung, Alford, and unknown officer #1 were acting under color of law.

172.     On or about 1:40 PM, on July 12, 2010, Plaintiff entered the Hollywood Police Department to report suspicious activity after having been stopped by what he believed to be imposters impersonating Hollywood Police Department officers.

173.     Officer Augustus told Plaintiff that the men worked for him and proceeded to question Plaintiff in an aggressive and intimidating manner.

174.     After his encounter with Officer Augustus and unknown officer #1, Plaintiff decided to file a complaint for the abusive manner in which he was treated.

175.     However, before Plaintiff could obtain more information about how to formally file a complaint, Officer Augustus interrupted and took him outside.

176.     Officer Augustus confronted Plaintiff about intention to file a complaint and again was very aggressive towards him.

177.     Plaintiff responded that he wanted to file a complaint because he was treated poorly for no apparent reason and felt that Officer Augustus was trying to intimidate him.

178.     Officer Augustus took Plaintiff back to the third floor and proceeded to question him.

179.     During the course of the questioning, Officers Ferguson, Chung, and Dabreau were called in.

180.    Officer Ferguson recognized Plaintiff from a prior encounter in which Plaintiff had complained after being stopped on the street by Officer Chung.

181.    Officer Ferguson instructed the other officers, "Let's teach this guy a lesson."

182.    Officer Augustus then asked Plaintiff to stand and put his hands behind his back.

183.    Officer Augustus told Plaintiff, "If I have it my way, you'll never work for the government again."

184.    Officer Augustus handcuffed Plaintiff.

185.    Plaintiff was never told why he was being arrested and he was never read his *Miranda* rights.

186.    Plaintiff was unlawfully arrested in retaliation for having asked to file a complaint because of the way Officer Augustus treated him.

187.    The false story about Plaintiff impersonating an officer was fabricated in an attempt to support Plaintiff's unlawful arrest.

188.    Plaintiff is not guilty of any wrongdoing and did not impersonate any law enforcement officer or federal agent.

189.    Plaintiff was not arrested until after he tried to file a complaint despite the fact that he is alleged to have impersonated an officer prior to his attempt to complain.

190.    Furthermore, the initial reports claim that Plaintiff impersonated an officer on commission of a felony resulting in death or injury.

191.    When the State Attorney refused to prosecute, Defendant City of Hollywood farmed the case out to the Federal Government.

21

192.    After a lengthy, 3 year investigation, during which Plaintiff's future was uncertain, the Federal Government concluded that there was no evidence that Plaintiff had impersonated a federal agent.

193.    None of the paraphernalia that Defendant officers confiscated was found to be evidence of any crime.

194.    The retaliatory arrest by Defendant Officers violated the Plaintiff's First Amendment rights.

195.    The arrest in retaliation for Plaintiff's express desire to file a complaint was unconstitutional.

WHEREFORE, Plaintiff requests judgment against defendants, and each of them, for: compensatory damages, punitive damages against Defendant Officers Augustus, Dabreau, Ruiz, Ferguson, Chung, Alford, and unknown officer #1; reasonable attorney's fees; costs of suit; as well as declaratory relief declaring the acts of Defendants to be unconstitutional; and such other relief as the Court may deem just and proper.

**COUNT IV: DEFENDANTS VIOLATED PLAINTIFF'S FIRST AMENDMENT RIGHTS BY THREATENING HIM WITH CRIMINAL SANCTIONS UNDER AN UNCONSTITUTIONAL STATUTE IN RETALIATION FOR REPORTING MISCONDUCT**
**(AGAINST DEFENDANTS HOLLYWOOD AND POLICE CHIEF)**

196.    Plaintiff repeats, re-alleges, and incorporates by reference the allegations and facts set forth in paragraph 1-128 above with the same force and effect as if herein set forth.

197.    At all times relevant to the Complaint, City of Hollywood was acting under color of law.

198.    Once the federal grand jury investigation was completed and Plaintiff was finally cleared of all wrongdoing, he filed a complaint with the City of Hollywood,

Florida Police Department's Internal Affairs Unit on September 10, 2014 in response to the events of July 12, 2010.

199.    Plaintiff was asked to fill out and sign a Hollywood Police Department Complaint Intake Report. **Exhibit A.**

200.    The Intake Report contains a sworn statement requiring complainants to abide by Fla. Stat. § 112.533, which threatens criminal action for the disclosure of any information obtained pursuant to the investigation.

201.    In 2005, the Eleventh Circuit held that Fla. Stat. § 112.533(4) is unconstitutional as a content-based restriction contrary to fundamental First Amendment Rights[1].

202.    Defendant City of Hollywood relied on an unconstitutional statute and intentionally cited the unconstitutional statute, which threatens criminal charges in an attempt to intimidate and frighten Plaintiff from speaking out about the events of July 12, 2010.

203.    The statute cited by Defendant Hollywood has been unconstitutional for nine years, which is more than enough warning that Defendant City of Hollywood was violating the constitution by attempting to silence Plaintiff through the threat of prosecution under an unconstitutional statute.

204.    Furthermore, the undersigned counsel filed a lawsuit in August 2014[2] against the City of Hollywood for the use of the same unconstitutional statute by its internal affairs department.

---

[1] *See* Cooper v. Dillon, 403 F. 3d 1208, 1213-1219 (11th Cir. 2005).
[2] Giraldo v. City of Hollywood, Case No. 14-CV-61781 (S.D. Fla. Filed Aug. 5, 2014).

205.    City of Hollywood acted outside its discretionary authority and violated clearly established law.

206.    Defendant City of Hollywood violated Plaintiff's First Amendment rights by asking Plaintiff to sign a Complaint Intake Report citing an unconstitutional statute and it was sufficiently clear that a reasonable police department would understand that its conduct was violating that right.

207.    Defendant City of Hollywood knew or should have known that its actions violated a clearly established right.

208.    As part of their policy and custom, Defendants Police Chief and Hollywood engaged in an unconstitutional violation of the Plaintiff's rights by citing the unconstitutional statute in question.

209.    The unconstitutional policy and custom is persistent and widespread.

210.    Defendants Hollywood and Police Chief has actual or constructive knowledge of the unconstitutional policy or custom.

211.    Defendants used an unconstitutional content-based restriction to stifle Plaintiff's speech in violation of his First Amendment rights.

WHEREFORE, Plaintiff requests judgment against defendants, and each of them, for: compensatory damages; punitive damages against Defendant City of Hollywood; reasonable attorney's fees; costs of suit; as well as declaratory relief declaring the acts of Defendants to be unconstitutional.  Additionally, Plaintiff requests that Defendants be enjoined from sending a letter with this language to any other individuals complaining of police conduct, and such other relief as the Court may deem just and proper.

## COUNT V: DEFENDANTS VIOLATED PLAINTIFF'S FIRST AMENDMENT RIGHTS BY INTIMIDATING HIM IN RETALIATION FOR REPORTING MISCONDUCT
## (AGAINST DEFENDANTS HOLLYWOOD, GONZALEZ, AND UNKNOWN OFFICER #2)

212.    Plaintiff repeats, re-alleges, and incorporates by reference the allegations and facts set forth in paragraph 1-128 above with the same force and effect as if herein set forth.

213.    At all times relevant to the Complaint, City of Hollywood was acting under color of law.

214.    Once the federal grand jury investigation was completed and Plaintiff was finally cleared of all charges, he filed a complaint with the City of Hollywood, Florida Police Department's Internal Affairs Unit on September 10, 2014 in response to the events of July 12, 2010.

215.    During an interview with the Internal Affairs Department of the City of Hollywood Police Department, Sergeant Gonzalez and Unknown Officer #2 were present.

216.    At all times relevant to the Complaint, Defendants Gonzalez and Unknown Officer #2 were acting under color of law.

217.    Sergeant Gonzalez and Unknown Officer #2 questioned Plaintiff.

218.    Doug Murray was present with Plaintiff during his interview with internal affairs.

219.    Each time Plaintiff complained about the poor treatment he received by the other officers, Unknown Officer #2 would warn Plaintiff, "you're antagonizing me."

220.    Unknown Officer #2 attempted to intimidate Plaintiff during the meeting.

221.    The intimidation tactics by Unknown Officer #2 were in retaliation for Plaintiff's complaint regarding the manner in which he was treated and his unlawful arrest.

222.    Gonzalez and Unknown Officer #2 acted outside their discretionary authority and violated clearly established law.

223.    Gonzalez and Unknown Officer #2 violated Plaintiff's First Amendment rights by intimidating him when he tried to complain about the way he was treated by the Hollywood Police Department officers.

224.    Gonzalez and Unknown Officer #2 attempted to chill Plaintiff's free speech by engaging in intimidation tactics when he complained about his unlawful arrest and unfair treatment.

225.    Unknown Officer #2 became so angry that he ended the interview with Plaintiff and Plaintiff did not have the opportunity to finish explaining his grievance against the officers involved in his unlawful arrest.

226.    The harassing manner in which Plaintiff was treated along with the use of an unconstitutional statute in the Intake form evidence a pattern and practice by Defendant City of Hollywood to discourage citizens from filing complaints against it police department and to chill free speech.

WHEREFORE, Plaintiff requests judgment against defendants, and each of them, for: compensatory damages; reasonable attorney's fees; costs of suit; as well as declaratory relief declaring the acts of Defendants to be unconstitutional; and such other relief as the Court may deem just and proper.

26

## <u>DEMAND FOR JURY TRIAL</u>

COMES NOW the Plaintiff and respectfully makes a demand for trial by jury on all issues herein.

Dated December 1, 2014.   Respectfully submitted,

         MORRIS, LAING, EVANS, BROCK
           & KENNEDY, Chartered


         s/ Kyle W. Ohlenschlaeger
         Kyle W. Ohlenschlaeger, Esq., FL. Bar No. 111685
         Email: kohlenschlaeger@morrislaing.com
         Jeremy W. Harris, Esq., FL. Bar No. 0041131
         Email:  jharris@morrislaing.com
         Angela Barbosa Wilborn, Esq., FL. Bar No. 105644
         Email:  awilborn@morrislaing.com
         505 S. Flagler Drive, Suite 400
         West Palm Beach, FL 33401
         Telephone: (561) 795-6996
         Facsimile: (561) 584-6459

         Designated Email for Service:
           Fl-litigation@morrislaing.com
         *Counsel for Plaintiff Robert Pinto*

27