UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 14-62719-COHN/SELTZER

ROBERT PINTO,

      Plaintiff,

v.

CITY OF HOLLYWOOD, et al.,

      Defendants.

_____/

## ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS

**THIS CAUSE** is before the Court on two motions to dismiss and their related

filings.  Specifically, the Court considers the following:

1.     A Motion to Dismiss filed by Hollywood Police Officers Eric Augustus, Antonio Dabreau, Officer Alford, William Ferguson, Dwayne Chung, and Julio Gonzalez ("the Officer Defendants") [DE 29];

2.     A Motion to Dismiss filed by Defendants City of Hollywood and Police Chief Fernandez ("the City Defendants") [DE 32];

3.     Plaintiff's Amended Omnibus Response to both Motions to Dismiss [DE 40] ("Response");

4.     The Officer Defendants' Reply [DE 44];

5.     The City Defendants' Reply [DE 45].

For the reasons that follow, the Court will **GRANT in part and DENY in part**

Defendants' Motions.  The Court dismisses Counts I, II, and III against the Officer

Defendants, and Counts I, II, III, and V against the City Defendants.

## I.      BACKGROUND

### A.      The July 12, 2010, Traffic Stop and Subsequent Arrest

This lawsuit stems from a traffic stop on July 12, 2010, perhaps colored by

Plaintiff's prior interactions with the City of Hollywood Police Department.  Plaintiff

alleges that on that date, two officers in an unmarked car pulled his car over while he

and his passenger were looking at an investment property in Hollywood, Florida.  [DE

27 at 4–5.]  A second unmarked car arrived at the scene shortly thereafter.  [Id. at 5.]

During the stop, Officers Dabreau and Alford (yet unidentified) approached Plaintiff's car

in "all black, tactical clothing with no markings, lettering, or police insignia."  [Id.]  Both

officers had guns, and  Officer Dabreau approached with his hand on his gun.  One

officer told Plaintiff that they were on burglary detail, while the other officer told Plaintiff

that they were on traffic detail.  [Id.]

The officers asked Plaintiff for his ID, and he showed them his Florida driver's

license, which was in a clear flap in his wallet.  [Id. at 6.]  Plaintiff also had a General

Services Administration ("GSA") identification card in his wallet.  It was also in a clear

flap.  [Id.]  The officers told Plaintiff that he had been pulled over for "fading brake lights"

and then left.

Plaintiff and his passenger felt uneasy about the stop because the officers had

never identified themselves.  [Id.]  Concerned that they had been stopped by persons

impersonating police officers, they drove to the City of Hollywood Police Department to

report the incident.  [Id.]

Plaintiff and his passenger were not warmly received.  Plaintiff informed a service

aide of his concerns, and the aide directed him to the Department's third floor.  Plaintiff's

passenger remained downstairs.  After ten minutes, Officer Augustus and an unknown officer (Unknown Officer 1) "stood closely on either side of Plaintiff."  [Id. at 7.]  Officer Augustus asked Plaintiff "what his problem was" and Plaintiff explained.  [Id.]  Officer Augustus declared that the officers who stopped Plaintiff "work for me" and became aggressive and angry.  Officer Augustus then interrogated Plaintiff, and Plaintiff left the third floor, returned to his passenger, and expressed frustration with how he was treated.

At this time, Officer Kenneth Haberland walked by.  Plaintiff asked if Officer Haberland was a sergeant and said that he would like to make a complaint.  [Id. at 8.]  Officer Haberland instructed Plaintiff to ask the service aide for an administrative sergeant.  Before Plaintiff could do so, however, Officer Augustus appeared.  [Id.]  He "grabbed Plaintiff before he could get an answer from the administrative aide."  [Id.]  Plaintiff informed Officer Augustus that he was going to make a complaint about the way Officer Augustus had treated him.  [Id.]

According to the Amended Complaint, here things took a darker turn.  Officer Augustus called over Officer William Ferguson, who knew Plaintiff from when Officer Ferguson handled Plaintiff's complaint against another officer, Officer Chung, months earlier.  [Id. at 9.]  Officer Ferguson then summoned Officer Chung.  The officers decided to, essentially, frame Plaintiff for impersonating a federal officer based upon his display of his GSA credentials.  Officer Ferguson called Plaintiff's GSA supervisor to confirm his identity.  [Id. at 10.]  Officer Ferguson then said, "Let's teach this guy a lesson," and arrested Plaintiff.  [Id.]

Plaintiff spent two-and-a-half days in jail.  [Id.]  The complaint affidavit, signed by Officer Dabreau, charged Plaintiff with one count of "impersonat[ing] officer on commission of felony/cause death/inj[ur]y."  [Id. at 11.]  The affidavit also falsely claimed that Plaintiff ran a stop sign and almost caused a collision with a red sedan, but was let off with a warning.  Id.  Defendant Yasmani Ruiz "signed off on some of the police reports" despite having no contact with Plaintiff.  As a result of his arrest, Plaintiff lost his contractor position with GSA, and suffered great emotional stress and career setbacks.

The State Attorney's Office with authority over Plaintiff's case declined to prosecute.  [DE 27 at 11.]  The City of Hollywood then notified the federal government. The federal government opened an investigation and issued Plaintiff a target letter. After three years, the federal government closed its case in August 2013, "finding no evidence that Plaintiff impersonated a federal agent or was involved in any wrongdoing." [Id. at 12.]

### B.    The 2013 Complaint

Upon the conclusion of the federal investigation, Plaintiff decided to file another complaint with the Hollywood Police Department.  [Id. at 12.]  This time, Plaintiff was permitted to fill out a complaint form.  [Id.]  Sergeant Julio Gonzalez provided Plaintiff with the form.  [Id.]  This Complaint form contained the following notice, which Plaintiff was required to sign:

> I also understand that Florida State Statute 112.533-
> "Confidentiality of Citizen Complaints against Law
> Enforcement Officers" requires that all complaints filed
> against a Law enforcement Officer, and all information
> obtained pursuant to the investigation by the Agency of such
> complaint shall be confidential until the investigation ceases
> to be active.  Therefore, as a participant in an internal
> investigation, if I willfully disclose any information before

such complaint, document, action or proceeding becomes a public record, I will be guilty of a Crime. The Hollywood Police Department will provide me with written notification of the outcome and conclusion of my complaint when the case has been fully investigated.

[DE 27-1 at 1.] Eight years earlier, the Eleventh Circuit held that such threats (and, specifically, the cited Florida Statute) violate the First Amendment. See Cooper v. Dillon, 403 F.3d 1208, 1223 (11th Cir. 2005).

Some time later, the Hollywood Police Department's internal affairs division called Plaintiff in for an interview. [DE 27 at 12.] There, Sergeant Gonzalez and an unknown officer (Unknown Officer 2) interrogated Plaintiff. Further, "[e]ach time Plaintiff complained about the poor treatment he received by the other officers during the 2010 incident, [Unknown Officer 2] would warn Plaintiff, 'you're antagonizing me.'" [Id. at 13.] Plaintiff alleges that Unknown Officer 2 "attempted to intimidate Plaintiff" throughout the meeting, in retaliation for filing the complaint. [Id.]

### C.      Plaintiff's Claims

Plaintiff organizes his Amended Complaint into five counts. In Count I, Plaintiff sues Defendants City of Hollywood, Officer Augustus, Officer Dabreau, Officer Ruiz, Officer Ferguson, Officer Chung, Officer Alford, and Unknown Officer 1 for unlawful seizure "in violation of the Fourth Amendment." [Id. at 15–17.] In Count II, Plaintiff sues these same Defendants for unlawful seizure "in violation of the Fourteenth Amendment." [Id. at 17–19.] In Count III, Plaintiff sues these Defendants for violating his First Amendment rights by, among other things, causing his unlawful arrest in retaliation for his complaints against the Hollywood Police Department. [Id. at 19–22.] In Count IV, Plaintiff sues Defendants City of Hollywood, Sergeant Gonzalez, and Police Chief

Fernandez over the language in the 2013 complaint form.  [Id. at 22–25.]  And, finally, in Count V, Plaintiff sues the City of Hollywood and Unknown Officer 2 for intimidating him in response to his filing of the 2013 complaint.  [Id. at 25–27.]

## II.      STANDARD

Defendants move to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  Per Rule 12(b)(6), a court shall grant a motion to dismiss where, based upon a dispositive issue of law, the factual allegations of the complaint cannot support the asserted cause of action.  Glover v. Liggett Grp., Inc., 459 F.3d 1304, 1308 (11th Cir. 2006).  Any "[f]actual allegations must be enough to raise a right to relief above the speculative level."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).

Nonetheless, a complaint must be liberally construed, assuming the facts alleged therein as true and drawing all reasonable inferences from those facts in the plaintiff's favor.  Twombly, 550 U.S. at 555.  A complaint should not be dismissed simply because the court is doubtful that the plaintiff will be able to prove all of the necessary factual allegations.  Id.  Accordingly, a well-pleaded complaint will survive a motion to dismiss "even if it appears that a recovery is very remote and unlikely."  Id. at 556.

## III.     DISCUSSION

The Court agrees with the moving Defendants that much of Plaintiff's Amended Complaint must be dismissed.  Specifically, the Court dismisses Counts I, II, and III against the Officer Defendants, and Counts I, II, III, and V against the City Defendants.

This Order will address each of Defendants' arguments in turn.  Defendants argue that Plaintiff's claims based upon his arrest are time-barred, that Plaintiff has not suffered an injury with regard to the 2013 complaint form, and that Plaintiff has not pleaded a policy or custom sufficient to render the City Defendants liable on any count.

### A.      Defendants' Argument that Counts I, II, and III are Time-Barred

The bulk of Defendants' motions urge the Court to dismiss Plaintiff's Counts I, II, and III as time-barred.  The Court agrees as to the Officer Defendants, and as to the City Defendants on Counts I and II.

### 1.      Applicable Standard and Limitations Periods

"The statute of limitations for section 1983 actions is the same as the statute of limitations for personal injury torts in the state in which the action arose."  Wallace v. Kato, 549 U.S. 384, 387 (2007).  In Florida, this is four years.  Chapell v. Rich, 340 F.3d 1279, 1283 (11th Cir. 2003) ("Florida's four-year statute of limitations applies to [] claims of deprivation of rights under 42 U.S.C. § 1983.")  The limitations period for a false arrest and imprisonment claim begins to run "once the victim becomes held pursuant to [legal] process."  Wallace, 549 U.S. at 390.  After issuance of process, "any damages recoverable must be based on a malicious prosecution claim and on the wrongful use of judicial process rather than detention itself."  Id.  The statute of limitations for a malicious prosecution claim begins to run upon the favorable termination of this process.  Uboh v. Reno, 141 F.3d 1000, 1005 (11th Cir. 1998).

Further, "[a] statute of limitations bar is 'an affirmative defense, and . . . plaintiff[s] [are] not required to negate an affirmative defense in [their] complaint."  La Grasta v. FIrst Union Securities, Inc., 358 F.3d 840, 845 (11th Cir. 2004) (quoting Tregenza v.

Great American Communications Co., 12 F.3d 717, 718 (7th Cir. 1993)).  That said, a

claim may be dismissed on limitations grounds under Rule 12(b)(6) if it is "apparent

from the face of the complaint" that the limitations period has run."  Id. (citing Omar v.

Lindsey, 334 F.3d 1246, 1251 (11th Cir. 2003)).

> **2.    Plaintiff's Counts I and II are time-barred as to all Defendants.**

Here, Plaintiff filed his initial Complaint [DE 1] on December 1, 2014.  [DE 1-1 at

1.]  He alleges that Defendants arrested him on July 12, 2010, more than four years

prior.  [DE 1 at 4, 10.]  He was held  in jail for two-and-a-half days.  Plaintiff concedes

that his claims are time-barred to the extent that he bases them on his false arrest and

subsequent jailing.  [DE 40 at 6.]

However, Plaintiff argues that Counts I and II of his Amended Complaint also

state claims for malicious prosecution.  But these claims either do not lie, or are are

time-barred as well.  "To establish a [Section] 1983 malicious prosecution claim, the

plaintiff must prove two things: (1) the elements of the common law tort of malicious

prosecution; and (2) a violation of his Fourth Amendment right to be free from

unreasonable seizures."  Grider v. City of Auburn, 618 F.3d 1240, 1256 (11th Cir. 2010).

Only Plaintiff's claims based upon his state charges satisfy the second of these

requirements.  And the State Attorneys' Office declined to prosecute them on August 2,

2010 [DE 27 at 11], also more than four years before Plaintiff filed suit.  Plaintiff cannot

state a Section 1983 claim based upon the federal investigation because, according to

the Amended Complaint, that investigation did not result in a seizure.[1]  See Grider, 618

F.3d at 1256.

### 3.  Plaintiff's Count III is dismissed on limitations grounds as to the Officer Defendants only.

In Count III, Plaintiff sues not for his unlawful arrest, but for violation of his First

Amendment right to complain to the Hollywood Police Department.  The Amended

Complaint suggests an extended retaliation campaign on the part of the City of

Hollywood.  Plaintiff alleges that Defendants wrongfully arrested him.  And then, upon

his release from jail and the State Attorney's decision to drop the state charges,

"Defendant City of Hollywood farmed the case out to the Federal Government."  [DE 27

at 21.]  The Amended Complaint does not indicate when this "farming out" occurred.

Therefore, the Court cannot dismiss this claim against the City of Hollywood on

limitations grounds at this stage.

Importantly, however, Plaintiff alleges no conduct by any of the individual

Defendants named in Count III that could have occurred after the limitations period.

Consequently, Plaintiff's Count III will be dismissed as to Defendants Augustus,

Dabreau, Ruiz, Ferguson, Chung, and Alford.

The Court rejects Plaintiff's argument that the continuing torts doctrine saves

these claims.  "When a tort involves continuing injury, the cause of action accrues, and

the limitation period begins to run, at the time the tortious conduct ceases."  Donaldson

---

[1] In reaching this determination, the Court need not address the thornier, and yet-unresolved, question of whether a grand jury investigation constitutes "judicial process" or a "prosecution" under common law.  See Grinder, 618 F.3d at 1250 ("[T]he constituent elements of the common law tort of malicious prosecution are: (1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused." (internal quotation marks omitted).)

v. O'Connor, 493 F.2d 507, 529 (5th Cir. 1974) (applying the continuous torts doctrine to a Section 1983 claim), vacated on other grounds, 422 U.S. 563 (1975).  "If the plaintiff has alleged some continuing conduct on the part of the defendants, a jury must decide whether a continuing tort has occurred."  Spadaro v. City of Miramar, 855 F. Supp. 2d 1317, 1330 (S.D. Fla. 2012).  But Plaintiff alleges no post-limitations conduct on the part of the individual Defendants.  Plaintiff's allegation that "the City of Hollywood farmed the case out" is not sufficient to bring any of the Officer Defendants within the doctrine.

## B.    Cognizable Injury and the 2013 Complaint Form

Next, both the City and Officer Defendants argue that Plaintiff's Count IV should be dismissed because Plaintiff has alleged no cognizable injury.  In Count IV, Plaintiff sues Sergeant Julio Gonzalez and the City of Hollywood over a complaint form that Sergeant Gonzalez presented to Plaintiff in 2013, upon Plaintiff's return to the Hollywood Police Department after the federal government concluded its investigation.  As set forth above, this complaint form contained a notice that threatened Plaintiff with criminal prosecution if he discussed the subject matter of his complaint with anyone before the complaint "becomes a public record."  [DE 27-1 at 1.]  The Eleventh Circuit had declared this notice unconstitutional in 2005.  See Cooper v. Dillon, 403 F.3d 1208, 1223 (11th Cir. 2005).  Defendants contend that Plaintiff has no claim because "Plaintiff does not allege that the intake form, in fact, prevented him from speaking."  [DE 32 at 8; see also DE 29 at 7–8.]

Defendants motions must be denied as to this issue.  "[A]n 'injury' in a First Amendment claim is broadly construed."  Abella v. Simon, 831 F. Supp. 2d 1316, 1337 (S.D. Fla. 2011), reversed in part on other grounds, 482 F.App'x 522 (11th Cir. 2012).

10

Contrary to Defendants' argument, "[t]he mere possibility of punishment as a result of speech may constitute an injury under the First Amendment." Id.  A claim may arise from "'the threat that the speaker will be prosecuted or otherwise punished for his or her speech.'" Id. (quoting Parow v. Kinnon, 300 F. Supp. 2d 256, 261–62 (D. Mass. 2004)). "'It is the possibility of a punishment as the price of one's speech, whether or not the threat of being sanctioned is realized, that causes harm to the speaker.'" Id.

Accordingly, Defendants' Motions as to Count IV will be denied.

### C.    Municipal Liability

Finally, the City Defendants argue that Plaintiff has not pleaded a custom, practice, or policy sufficient to render it liable for any of the conduct described in the Amended Complaint.  [DE 32 at 7–17.]  With respect to all but Count IV, the Court agrees.

A municipality cannot be held liable under Section 1983 for the acts of its employees on a theory of *respondeat superior*.  Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978); Scala v. City of Winter Park, 116 F.3d 1396, 1399 (11th Cir. 1997); Cook v. Sheriff of Monroe Cnty., 402 F.3d 1092, 1116 (11th Cir. 2005).  Rather, a municipality bears liability under Section 1983 only if the challenged action implements or executes a municipal policy or custom.  Scala, 116 F.3d at 1399 (citing Monell, 436 U.S. at 694).  That said, "municipal liability may be imposed for a single decision by a municipal policymaker under appropriate circumstances."  Scala, 116 F.3d at 1399 (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 480 (1986)).  "[L]iabilitiy may arise from 'a course of action tailored to a particular situation not intended to control decisions

11

in later situations,' provided that 'the decisionmaker posses final authority to establish municipal policy with respect to the action ordered." Id.

Here, Plaintiff's Amended Complaint contains scant allegations concerning any policy, practice, or custom put in place by the City of Hollywood.  References to a city policy or custom appear across only three paragraphs.  At Paragraph 151, the Amended Complaint states that "the unlawful arrest and detention of Plaintiff resulted from the unlawful policy and custom of the Police Chief and City of Hollywood."  [DE 27 at 17.]  With respect to Count IV's complaint form, the Amended Complaint alleges at Paragraphs 210 and 211 that the form contained the offending language "as part of [the Chief and City's] policy and custom," and that this "policy and custom is persistent and widespread."  [Id. at 24.]

With respect to most of the alleged conduct, these claims to a policy or custom are conclusory and therefore not well-pleaded.  Accordingly, Counts I, II, III, and V of Plaintiff's Amended Complaint fail to state claims against the City Defendants in keeping with the substantive requirements of Monell and the procedural standards of Twombly and Iqbal.  Plaintiff has failed to allege sufficient facts to raise Plaintiff's right to relief on these claims above a speculative level.  Further, Plaintiff's allegation that the City farmed his case out to the federal government is likewise insufficient to allege conduct by a decisionmaker that possesses "final authority to establish municipal policy with respect to the action ordered.'" Pembaur, 475 U.S. at 480.

However, Count IV is another matter.  Plaintiff bases his claims in Count IV on language that appears in a Hollywood Police Department form.  [DE 27 at 22–25.] Plaintiff attaches this form to the Amended Complaint.  [DE 27-1.]  Construed in the light

most favorable to Plaintiff, he alleges that he received this form in routine response to his complaint.  The presence of the offending language on a Department form raises Plaintiff's allegations of a policy or custom beyond a speculative level, at least with respect to that form.  Plaintiff's Count IV will therefore withstand Defendant City's motion to dismiss.

### IV.   Conclusion

The Court grants in part and denies in part Defendants' motions to dismiss. Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1.      The Motion to Dismiss filed by Officers Augustus, Dabreau, Alford, Ruiz, Ferguson, Chung, and Gonzalez [DE 29] is **GRANTED in part and DENIED in part** as set forth below.

   a.      Counts I, II, and III of the Amended Complaint [DE 27] are **DISMISSED** as to Officers Augustus, Dabreau, Ruiz, Ferguson, Chung, and Alford.

   b.      The Motion is **DENIED** in all other respects.

2.      The Motion to Dismiss filed by Defendant City of Hollywood and Police Chief Fernandez is **GRANTED in part and DENIED in part** as set forth below.

   a.      Counts I, II, III, and V of the Amended Complaint are **DISMISSED** as to the City of Hollywood and Police Chief Fernandez.

   b.      The Motion is **DENIED** in all other respects.

3.      The Court notes that Plaintiff concedes that his claims against Police Chief Fernandez, in his official capacity, are tantamount to claims against the City of Hollywood.  Further, the Court notes that Plaintiff does not seek punitive damages against either Police Chief Fernandez or the City.  [See DE 37 at 17 n.2.]

   **DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County,

Florida, this 15th day of June, 2015.

JAMES I. COHN
United States District Judge

   Copies provided to counsel of record via CM/ECF.